PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1161

_____

RENA C.,
                    Appellant

v.

COLONIAL SCHOOL DISTRICT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-15-cv-01914)
District Judge:  Honorable Timothy J. Savage

_____

Argued October 23, 2017
Before:  GREENAWAY JR., NYGAARD and FISHER,
*Circuit Judges*.

(Filed: May 14, 2018)

David J. Berney, Esq.          [ARGUED]
1628 John F. Kennedy Boulevard
8 Penn Center Plaza, Suite 1000
Philadelphia, PA 19103
          *Counsel for Appellant*


Ellen M. Saideman, Esq.
7 Henry Drive
Barrington, RI 02806
          *Counsel for Amicus Appellant*


Karl A. Romberger, Jr., Esq.          [ARGUED]
Sweet Stevens Katz & Williams
331 East Butler Avenue
P.O. Box 5069
New Britain, PA 18901
          *Counsel for Appellee*


Emily J. Leader, Esq.
Pennsylvania School Boards Association
400 Bent Creek Boulevard
P.O. Box 2042
Mechanicsburg, PA 17055

Sarah B. Dragotta, Esq.
Kevin M. McKenna, Esq.
Nicole D. Snyder, Esq.
Latsha Davis & McKenna
350 Eagleview Boulevard, Suite 100
Exton, PA 19341
        *Counsel for Amicus Appellees*

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge.*

This case arises out of a dispute under the Individuals with Disabilities Education Act ("IDEA"). Under the IDEA, when parents and school districts dispute a child's educational placement, a parent may file an administrative due process complaint that can lead to an administrative hearing. At least ten days before the dispute reaches a hearing, the school district can extend a settlement offer to the parent, referred to herein as a "ten-day offer." If the matter proceeds to a hearing and the parent is the prevailing party, this ten-day offer becomes significant. A parent who is the prevailing party may be awarded reasonable attorney's fees under the IDEA, but the ten-day offer allows a school district to limit its exposure to such fees by limiting a parent's eligibility for attorney's fees to only those fees accrued before the time of the ten-day offer. If a parent rejects the ten-day

3

offer, the parent may only receive attorney's fees for work done after the time of the offer if (1) the hearing leads to more favorable relief than the offer included, or (2) the parent was substantially justified in rejecting the offer.

In the instant matter, Rena C., mother to student A.D., filed an administrative due process complaint against the Colonial School District to determine an appropriate placement for her daughter. In an effort to limit the accrual of owed attorney's fees, Colonial extended Rena C. what it contends was a ten-day offer. Rena C. rejected the offer. When the matter eventually proceeded to a hearing, an administrative officer entered an order in favor of Rena C., ordering a private school placement for the student. As the prevailing party, Rena C. then filed a claim for attorney's fees in the District Court. This appeal concerns whether or not Colonial successfully limited Rena C.'s eligibility for attorney's fees with its offer. Because Rena C. was the prevailing party, the District Court awarded her attorney's fees for work performed prior to the ten-day offer. However, the District Court held that because she did not receive more favorable relief and was not substantially justified in rejecting the offer, she was not entitled to fees accrued after Colonial's offer. We disagree and hold that Rena C. was substantially justified in rejecting Colonial School District's offer. We will reverse and remand to the District Court for recalculation of attorney's fees.

4

I.

Rena C.'s child, A.D., attended public school in the Colonial School District. The instant matter was not the first placement dispute between Rena C. and Colonial. Prior to this matter, when A.D. was entering seventh grade, Rena C. unilaterally pulled A.D. from the public school she had been attending and enrolled her at the Stratford Friends School. Rena C. claimed that Colonial had failed to provide a free, appropriate public education as required by the IDEA and sought reimbursement from Colonial. The matter went to an administrative hearing officer who found that A.D.'s Individualized Education Program (IEP) at Colonial was inappropriate and that the placement at Stratford was appropriate. The hearing officer awarded Rena C. two years of compensatory education, tuition reimbursement for the current school year, and ongoing tuition reimbursement until Colonial convened an appropriate IEP meeting.

The following school year, for A.D.'s eighth grade year, Rena C. again enrolled her at Stratford. Colonial convened an IEP meeting at the end of that school year. Rena C. disputed the adequacy of the IEP and requested mediation, thus beginning the dispute underlying this appeal. At the end of the summer, Rena C. notified Colonial that she intended to enroll A.D. at Delaware Valley Friends School for the next school year and requested reimbursement for tuition and related expenses. Colonial responded that the new IEP placing A.D. at the public school was adequate and that it therefore was not required to further reimburse Rena C. for any educational expenses. Rena C. then cancelled the mediation she had requested and filed an administrative complaint challenging the adequacy of the IEP. She sought declaratory relief and "reimbursement for private tuition and associated costs ('tuition reimbursement') arising from

5

[A.D.]'s private placements for the [previous] school year and the [upcoming] school year." App. 45. Rena C. received a tuition bill from Delaware Valley on the same day she filed her administrative complaint. The invoice shows two separate educational expenses: $36,300 for tuition and $10,800 for one-on-one educational support.

On September 18, 2014, Colonial sent Rena C. what it contends was a ten-day offer pursuant to 20 U.S.C. § 1415(i)(3)(D)(i)(I)-(III). In this letter, Colonial offered "to pay private school tuition and transportation for Parent's unilateral placement at Delaware Valley Friends School." App. 49. Rena C. did not respond to this letter for over a month. She eventually claimed that it did not constitute a valid offer because it lacked school board approval, and that it was inadequate for failing to address attorney's fees or pendency.[1]

The parties attempted negotiation, but eventually proceeded to an administrative hearing. After the first session of the hearing concluded, the parties participated in mediation with the assistance of a secondary administrative hearing officer. Subsequently, the parties stipulated to a consent order entered by an administrative hearing officer providing for tuition, one-on-one instructional support, transportation reimbursement, and pendency at Delaware Valley. The order did not include attorney's fees.

Rena C. filed a complaint in the Eastern District of Pennsylvania seeking approximately $70,000 in attorney's fees under the IDEA, the Americans with Disabilities Act (ADA), and § 504 of the Rehabilitation Act. Colonial

---

[1] Under the IDEA, pendency refers to the educational placement in which a student has the right to "stay-put" during a placement dispute.

counterclaimed for attorney's fees under 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III), alleging that Rena C. continued to litigate after the litigation had become frivolous, unreasonable, or without foundation, thereby needlessly increasing the cost of litigation.

The District Court granted Rena C.'s motion for summary judgment on her claim for attorney's fees, but awarded her only $7,438.00. This figure included only those attorney's fees accrued before the school district made its ten-day offer. She was not awarded any fees accrued after the school district made its ten-day offer because the court found that she did not receive more favorable relief during the subsequent proceedings, and that she was not substantially justified in rejecting the offer. The District Court granted in part and denied in part Colonial's motion for summary judgment, rejecting its argument that the school district was a prevailing party, but agreeing that Rena C. was not entitled to fees for post-offer work. The District Court rejected Colonial's counterclaim because Colonial was not the prevailing party.[2]

---

[2] The order filed by the District Court in response to Rena C.'s motion for summary judgment on Colonial's counterclaim says that the motion was denied, but the opinion of the District Court makes clear that the court held that Colonial could not receive fees because it was not a prevailing party. Therefore, we regard the order as a clerical error and regard the opinion as disposing of Colonial's counterclaim.

## II.

The District Court exercised jurisdiction under 28 U.S.C. § 1331 and 1343. This Court exercises jurisdiction under 28 U.S.C. § 1291. We apply plenary review to legal questions related to the interpretation of ten-day offers and to questions of construction regarding such offers under the IDEA. This standard is consistent with this Court's standard of review for rulings on attorney's fees, and with its standard of review for Federal Rule of Civil Procedure 68 offers of judgment. *See M.R. v. Ridley School District (Ridley II)*, 868 F.3d 218, 223 (3d Cir. 2017) ("Although ordinarily we review attorneys' fees rulings for abuse of discretion, our review is plenary where, as here, the district court based its denial on legal conclusions."); *Le v. University of Pennsylvania*, 321 F.3d 403, 406 (3d Cir. 2003) (exercising "plenary review over both legal questions regarding the interpretation of Rule 68 and the construction of the offer of judgment").

## III.

Rena C. makes five alternative arguments on appeal as to why she is entitled to recover attorney's fees accrued after Colonial's September 18, 2014 offer. First, she argues that Colonial did not make a valid offer of settlement pursuant to 20 U.S.C. § 1415(i)(3)(D)(i). We conclude that it did. Second, she argues that she received more favorable relief in the administrative order than Colonial had included in the ten-day offer. We conclude that she did not. Third, she argues that she was substantially justified in rejecting the offer. We agree. Fourth, she argues that she was entitled to fees under the ADA and § 504 even if she was precluded under the IDEA, and fifth, she argues that she was separately entitled to fees for her defense of Colonial's counterclaim. We decline to reach these issues. Because the IDEA did not preclude fees, we need not address these alternative statutory arguments.

8

A) Colonial School District made a valid offer of settlement pursuant to 20 U.S.C. § 1415.

Rena C. argues that Colonial did not make a valid ten-day offer because the school board had not yet approved it. Neither Pennsylvania law nor the IDEA, however, required Colonial to secure school board approval prior to extending a ten-day offer of settlement under 20 U.S.C. § 1415. Pennsylvania law requires the affirmative vote of the majority of the members of a board of school directors to take any action, *inter alia*, "[c]reating or increasing any indebtedness" or "[e]ntering into contracts of any kind, including contracts for the purchase of fuel or any supplies, where the amount involved exceeds one hundred dollars ($100)." 24 P.S. § 5-508. This state statute might require school board approval before a completed settlement agreement for more than one hundred dollars can be enforced, but the text of the provision lacks any indication that it prohibits school boards from doing what Colonial did here: authorizing an agent, such as an attorney, to negotiate a contract on its behalf. And Rena C. points to no cases applying § 5-508 to IDEA ten-day offers. On its face, 20 U.S.C. § 1415(i)(3)(D)(i) requires only that the ten-day offer be a "written offer of settlement." Colonial's offer to Rena C. was exactly that—an offer of settlement in writing.

The IDEA has been interpreted to promote the speedy resolution of disputes between parents and school districts. *El Paso Independent Sch. Dist. v. Richard R.*, 591 F.3d 417, 426 (5th Cir. 2009) ("Early resolution through settlement is favored under the IDEA."). Interpreting § 5-508 to require school board approval before a ten-day offer could be valid under the IDEA would undermine the IDEA's goal of

9

promoting speedy resolutions of placement disputes. The broad terms of the IDEA provide a framework that is flexible enough to apply to a multitude of different jurisdictions and school districts, each with its own policies and procedures. The clear wording of the IDEA requires only a "written offer of settlement" and § 5-508 does not provide a basis for requiring Colonial to have done more in order to make a valid ten-day offer satisfying the IDEA. We therefore hold that Colonial made a valid ten-day offer under the IDEA to Rena C.

      B) <u>Rena C. did not receive more favorable relief in the administrative officer's order than she had been offered in Colonial's ten-day offer.</u>

The IDEA provides for an award of reasonable attorney's fees to a prevailing party who is the parent of a child with a disability. 20 U.S.C. § 1415(i)(3)(B)(i)(I). However, a parent may not receive attorney's fees "for services performed subsequent to the time of a written offer of settlement to a parent" if: (1) the offer is made more than ten days before the proceeding begins; (2) the offer is not accepted within ten days; and (3) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." *Id.* § 1415(i)(3)(D)(i).

Colonial provided the settlement offer more than ten days before the proceeding began. Rena C. never sent any response, thereby rejecting the offer. The District Court found that the relief ultimately obtained by Rena C. was not more favorable than the settlement offer. We agree, finding that the 20 U.S.C. § 1415(i)(3)(D)(i) bar applies.

Rena C.'s administrative complaint requested two items of relief. First, she sought "reimbursement for private

10

tuition and associated costs (tuition reimbursement)" for two school years. App. 43. Second, she requested declaratory relief in the form of an adjudication that her child's rights under the IDEA, the ADA, and § 504 had been violated. In its ten-day offer, Colonial offered "to pay private school tuition and transportation for Parent's unilateral placement at Delaware Valley Friends School." App. 49. The administrative officer's order provided for tuition, one-on-one instructional support, transportation reimbursement, and pendency at Delaware Valley.

Rena C. argues that the explicit inclusion of one-on-one instruction and pendency rendered the final order more favorable than the ten-day offer. This is incorrect because the terms of the ten-day offer already included these items.

> *1. Colonial's offer to pay tuition included the cost of one-on-one instruction.*

Although the administrative officer's order explicitly indicated that one-on-one instruction was included (while the ten-day offer did not), the enumeration of this item did not constitute more favorable relief. The District Court correctly concluded that Colonial's offer to pay tuition necessarily included an offer to pay for one-on-one instruction.

Rena C.'s due process complaint sought "reimbursement for private tuition and associated costs ('tuition reimbursement') arising from [student's] private placements for the 2013-2014 school year and the 2014-2015 school year." App. 45. On the same day that she filed her complaint, Delaware Valley sent an invoice to Rena C for the "2014-2015 Tuition for A.D." containing two line items: $36,300 for tuition and $10,800 for "Language Arts One-on-One" for a total due of $47,100. Rena C. did not share this invoice with Colonial before the ten-day offer letter was sent.

11

The ten-day offer letter offered "private school tuition and transportation." App. 49. The District Court correctly concluded that Colonial offered to pay the tuition bill from Delaware Valley for the 2014-2015 school year, which necessarily included the one-on-one instruction.

Colonial cannot be penalized for not specifically including the cost of one-on-one instruction when Rena C. never informed Colonial that this charge was annotated separately as part of Delaware Valley's tuition invoice. Merriam-Webster defines "tuition" as "the price of or payment for instruction." *Webster's Third New International Dictionary,* 2461 (1993). The Random House Dictionary defines tuition as "the charge or fee for instruction as at a private school or a college or university." *Random House Dictionary of the English Language*, 2034 (2d Ed. 1987). Based on the language contained in Rena C.'s complaint and the dictionary definitions, Colonial's offer to pay "private school tuition" included the cost of one-on-one instruction. When the hearing officer ordered Colonial to "pay private school tuition" and specified that tuition included one-on-one instruction, the hearing officer did not provide greater relief than Colonial's ten-day offer to "pay private school tuition." The hearing officer simply knew the additional fact that the one-on-one instruction was a separately annotated cost in the bill for tuition.

Rena C. argues that it was ambiguous whether one-on-one instruction was included in Colonial's offer and that this ambiguity should have been construed against Colonial, both because Colonial was the drafter, and because Colonial was the moving party at the summary judgment stage. Rena C. is correct that any ambiguity would have been construed against Colonial had she agreed to the offer and then Colonial refused to pay. However, this is not a contract enforcement case.

Rena C. cannot inject ambiguity into a clear offer to pay private school tuition by withholding information about the particular billing conventions of the private school. Had Rena C. been unsure whether Colonial's offer included the cost of one-on-one instruction, she could have clarified with them. Unlike Rule 68 offers of judgment, IDEA ten-day offers are not required to be non-negotiable. Ten-day offers may be clarified by parents. *See Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1223 (9th Cir. 2016).

Additionally, Rena C.'s contention that the District Court erred in applying the summary judgment standard by not resolving the issue of whether one-on-one instruction was included in tuition in Rena C.'s favor fails. Whether "tuition" in the ten-day offer included the cost of one-on-one-instruction is a legal question regarding the construction of the offer, not a factual question that should be resolved in favor of the nonmoving party at the summary judgment stage.

> *2. Colonial's offer to pay tuition at a private school placement would have created pendency at the private school and triggered the student's "stay-put" rights at the private school.*

Pendency refers to a student's rights under the IDEA to "stay-put" in the current educational placement. The "stay-put" provision requires that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). This requires the school district to continue to pay for the "then-current educational placement" during the pendency of proceedings resolving placement disputes. *Drinker by Drinker v. Colonial*

13

*Sch. Dist.*, 78 F.3d 859, 865 (3d Cir. 1996).

The ten-day offer did not mention pendency explicitly, but the subsequent administrative order included the statement that "[b]y the parties' agreement, pendency shall be at Delaware Valley Friends School." App. 127. Rena C. contends that this sentence provided more favorable relief than ten-day offer. Colonial contends that although the ten-day offer letter did not specifically state that pendency would attach at Delaware Valley, pendency would have attached had Rena C. accepted their offer because Delaware Valley would have automatically become A.D.'s "then-current placement."

This issue turns on whether Rena C.'s acceptance of the ten-day offer would have made Delaware Valley A.D.'s "then-current educational placement," vesting her with "stay-put" rights should any dispute over placement arise in the future. This Court has held that "[b]ecause [then-current] connotes preservation of the status quo, it refers to the operative placement actually functioning at the time the dispute first arises." *Drinker*, 78 F.3d at 867 (quoting *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625–26 (6th Cir. 1990)). Under this Court's precedent, "the dispositive factor in deciding a child's 'current educational placement' should be the Individualized Education Program ('IEP') actually functioning when the 'stay put' is invoked." *Drinker*, 78 F.3d at 867 (citation omitted).

This provision "reflect[s] Congress's conclusion that a child with a disability is best served by maintaining her educational status quo until the disagreement over her IEP is resolved." *M.R. v. Ridley School Dist. (Ridley I)*, 744 F.3d 112, 118 (3d Cir. 2014). A student's "operative placement could be either a public school or a private school that the local district was financing to satisfy the requirement that

14

every child be given a *free*, appropriate education." *Id*.

"Stay-put" rights do not attach when a parent unilaterally moves a child to a new placement. However, "[t]he new placement can become the educational setting protected by the "stay-put" rule if the parents and 'the State or local educational agency' agree to the change." *Id. at* 118–19. The State is considered to have agreed to the change when an administrative review process yields a decision approving of the parent's unilateral placement. *Id.* at 119. Once an administrative ruling validates the parents' decision to move the child to a new placement, "the move to private school is no longer the parents' unilateral action, and the child is entitled to 'stay put' at the private school for the duration of the dispute resolution proceedings." *Id.*

This Court has not squarely addressed whether a school district's private agreement to pay for a parent's unilateral private school placement constitutes an agreement to the placement. We now hold that by agreeing, without limitations, to pay tuition at a private school, the school district, as the local educational agency, agrees that the private school placement is appropriate and that paying tuition there fulfills its obligation to provide a free and appropriate public education. When parents and a local educational agency agree on a placement without limitations, that placement becomes the educational setting protected by the "stay-put" provision of 20 U.S.C. 1415(j). Had Rena C. accepted Colonial's offer, A.D.'s "stay-put" rights would

15

have attached at Delaware Valley.[3]

Rena C. argues that the District Court's conclusion that "stay-put" rights would attach was not supported by law because a school district's financial responsibility for a student's placement is not equivalent to agreement by the district to the placement. To support this argument, Rena C. cites *Lauren W. v. Bd. of Educ.*, No. 02-4775, 2002 U.S. Dist. LEXIS 18303, (E.D. Pa. Sept. 12, 2002) and *K.L. v. Berlin Borough Bd. of Educ.*, No. 13-4215, 2013 U.S. Dist. LEXIS 111047 (D.N.J. Aug. 7, 2013). Neither of these cases is controlling and neither addresses the scenario presented in

---

[3] We recognize that our law regarding implied pendency in ten-day offers was not settled during the events giving rise to this litigation. Rena C. argued that she had a good faith basis for declining Colonial's offer, and other courts have held that good faith arguments can qualify as substantial justification for rejecting ten-day offers under the IDEA. *See B.L. v. District of Columbia*, 517 F. Supp. 2d 57, 61 (D.D.C. 2007) (holding parents substantially justified in rejecting an offer that did not include expert costs because, at the time of the offer, "it was by no means settled law that expert costs could not be recovered" and only an intervening Supreme Court decision had made clear that the parents' rejection lacked legal basis); *R.N. v. Suffield Bd. of Educ.*, 194 F.R.D. 49, 53 (D. Conn. 2000) (holding parents' rejection substantially justified because they were acting based on split of authority within district). However, as we will explain below, we conclude here that Rena C. was substantially justified in rejecting Colonial's offer for a different reason: because it did not include attorney's fees. Thus, we need not reach the issue of whether a good faith argument rooted in unsettled law can qualify as substantial justification.

this case.

In *Lauren W.*, the settlement specifically stipulated that pendency would not attach to the parents' unilateral school placement. 2002 U.S. Dist. LEXIS 18303 at *9. However, once the school board voted to pay for tuition at that placement beyond the terms of the settlement, pendency did attach. *Id.* at *10. In *K.L.*, again, the settlement stipulated that the question of pendency was still disputed by the parties and was unaffected by the agreement. 2013 U.S. Dist. LEXIS 111047 at *12–13. The district court there concluded that the settlement agreement only pertained to reimbursement and did not constitute an agreement on appropriate placement. *Id.* Unlike those cases, Colonial's offer here included no specific limitations on pendency.

Without any limitations attached, a school district's agreement to pay for private school tuition constitutes an agreement to placement and triggers the student's "stay-put" rights. For this reason, the explicit inclusion of pendency in the order does not create a more favorable outcome than the ten-day offer.

Rena C. did not receive more favorable relief in the final order than she was offered by Colonial in the ten-day offer. The bar of 20 U.S.C. § 1415(i)(3)(D)(i) therefore applies and she is prevented from receiving attorney's fees "for services performed subsequent to the time of a written offer of settlement," unless she was substantially justified in rejecting Colonial's offer. 20 U.S.C. § 1415(i)(3)(D)(i); *see id.* § 1415(i)(3)(E).

C) <u>Rena C. was substantially justified in rejecting Colonial's ten-day offer letter.</u>

Under 20 U.S.C. § 1415(i)(3)(E), Rena C. may still be eligible for post-offer attorney's fees, even though she did not

receive more favorable relief, if she was substantially justified in rejecting Colonial's ten-day offer. Rena C. identifies three reasons why she was substantially justified in rejecting the ten-day offer. First, the offer did not include attorney's fees and costs. Second, the offer was vague. Third, she had a good faith basis for believing that the offer did not include the cost of one-on-one instruction, pendency, or attorney's fees and costs. The District Court rejected these three arguments, concluding that she was not substantially justified in rejecting the offer. We hold that the absence of attorney's fees provided Rena C. with substantial justification for rejecting the offer. Given that holding, we will not reach her vagueness or good faith arguments.

The Third Circuit, like most other circuits, has not defined the standard for determining whether a parent was substantially justified under the IDEA in rejecting a settlement offer. *See Beauchamp*, 816 F.3d at 1222 ("There is little precedent interpreting the phrase 'substantially justified'"). Case law from district courts and at least one circuit court offers a somewhat scattered picture in the context of attorney's fees.

### 1. Attorney's fees are relevant to the ten-day offer.

The IDEA does not require a school district to include attorney's fees in ten-day offers to parents. To obtain attorney's fees in court, parents must be the prevailing party with a judgment on the merits, or a court-ordered consent decree that creates a "material alteration of the legal relationship." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).

Colonial argues that attorney's fees, as a collateral

18

matter, are irrelevant in the context of a ten-day offer because they are not part of the available relief for parents at an administrative hearing. This argument ignores the fact that relief granted at an administrative hearing creates the condition necessary for parents to seek attorney's fees. Without pursuing the administrative hearing, a parent cannot achieve the prevailing party status necessary to claim attorney's fees. *See id.*; *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 855–857 (3d Cir. 2006). The District Court correctly disposed of this argument by recognizing that had Rena C. accepted the ten-day offer, the parties would have created a non-judicially sanctioned agreement, and neither party would be considered the prevailing party, so Rena C. would have no path to recover attorney's fees. Attorney's fees are therefore relevant to a ten-day offer.

### 2. *Colonial's offer did not include attorney's fees.*

The District Court found that the ten-day offer included an offer to pay attorney's fees, so Rena C. was not substantially justified in rejecting the offer. The letter stated: "This offer does not imply that the School District acknowledges any liability in this matter whatsoever; rather, it is an attempt to achieve an amicable resolution. This offer is also being made in order to further limit the School District's possible prevailing party attorney fee liability." App. 49. The District Court held that, because "Colonial explained it was making the offer to 'further limit' exposure to attorney's fees, [it] implicitly acknolwedg[ed] it would pay attorney's fees incurred to date." App. 20.

In interpreting this offer, we must focus on its plain language. *See Lima v. Newark Police Dep't.*, 658 F.3d 324, 331 (3d Cir. 2011). The plain language does not indicate that

Colonial offered to pay any amount of attorney's fees, but rather that it wished to avoid them. The District Court erred because the language of the offer makes clear that Colonial believed its liability for attorney's fees would only arise if Rena C. were the prevailing party. Had Rena C. accepted the offer, she would not be the prevailing party. For this reason, the District Court erred in concluding that the ten-day offer letter included attorney's fees. Had Colonial intended to include attorney's fees in its offer, it had the burden to state that the offer included payment of attorney's fees accrued up until that point. *See id.* (holding that the district court erred in concluding that Rule 68 offer of judgment included attorney's fees because the offer "did not explicitly include attorney's fees or costs).[4]

> 3. *A ten-day offer that affords no attorney's fees provides a parent with substantial justification to reject the offer when the school district could not rationally believe that attorney's fees had not accrued.*

The IDEA provides for attorney's fees so that parents may seek assistance when necessary to protect their child's right to a free, appropriate public education. Ten-day offer letters should not permit school boards to force parents to choose between securing an appropriate placement for their child and obtaining the attorney's fees to which they would

---

[4] Additionally, the District Court erred in considering that after the ten-day offer had lapsed, Colonial made a separate, explicit offer to pay reasonable attorney's fees because that evidence is extrinsic and cannot be used to interpret the offer.

otherwise be statutorily entitled.

There is no controlling case law in this Circuit regarding whether or not the absence of attorney's fees provides substantial justification for rejecting a ten-day offer. There is varied case law among the district courts and the Fifth Circuit regarding this question.

The District Court for the District of Columbia provided compelling reasoning in *Daniel v. District of Columbia* for considering the absence of attorney's fees in an offer as substantial justification for rejection by the parents. 174 F. Supp. 3d 532, 546 (D.D.C. 2016). There, the court explained that "[p]arents or guardians of children with special needs should not have to choose between a District offer of special education services for those children on the one hand, and continuing to pursue litigation so that their counsel who caused DCPS to make the offer in the first place may obtain some measure of reasonable compensation." *Id.* The court in *Daniel* reasoned that the school district could not rationally believe that the parents had not accrued attorney's fees before the time of its offer. *Id.* at 545. In another case, the same district court stated that "Congress included the [IDEA] fee-shifting provision so that all children and their families would be able to enforce the child's right to a free and appropriate public education, regardless of financial means." *Garvin v. Gov't of D.C.*, 910 F. Supp. 2d 135, 138 (D.D.C. 2012). In *Dicks v. District of Columbia*, the court found parents substantially justified in rejecting an offer that only included attorney's fees for 1.2 hours when the attorney had worked approximately 33 hours. 109 F. Supp. 3d 126, 131 (D.D.C. 2015) ("A settlement offer that compensates counsel for a mere fraction [of] its efforts deters parents from exercising their due process rights and, as such, is inimical to the IDEA's purpose.").

21

In contrast, the Fifth Circuit held that the absence of attorney's fees in a settlement offer did not substantially justify the parent's rejection. *Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 210 (5th Cir. 2011). The offer in that case had been extended to the parent before the parent filed a due process complaint, and before the school district learned that the parent was represented by an attorney. Though the attorney in that case had recorded 13.8 hours of work through the date of the settlement offer, the school district was not even aware of the due process complaint, let alone the attorney's involvement when it extended a written settlement offer. *Id.* at 204. On those facts, the court held that because the amount of fees claimed was so low, their omission did not establish substantial justification to reject the offer. The court there noted that it did "*not* hold that every plaintiff rejecting a settlement offer because it does not include such fees is, *per se,* not substantially justified in rejecting it." *Id.* Rena C.'s case can be distinguished from *Gary G.* because here the due process complaint had been filed and Colonial certainly knew that an attorney was involved and that attorney's fees had accrued when it extended its ten-day offer.

This Circuit has recognized that "the IDEA's legislative history reflects that Congress enacted the attorney's fees provision specifically to ensure 'that due process procedures, including the right to litigation if that becomes necessary, are available to all parents.'" *Ridley II,* 868 F.3d at 227 (alterations omitted) (quoting S. Rep. No. 99-112, at 2 (1985)). The ten-day offer provision in the IDEA facilitates efficient resolutions of disputes between parents and school districts over placement and seeks to obviate the need for a due process hearing. Still, the ten-day offer is often extended after a parent has hired an attorney to assist them in asserting their child's rights.

We do not read the IDEA to force parents to decide between the resolution of a placement dispute and paying for the attorney who assisted in achieving an appropriate placement for the student. A school district seeking to settle a dispute in which a lawyer has been involved should acknowledge that the parent has accrued attorney's fees and should clearly state if its offer includes the payment of any fees. A parent is substantially justified in rejecting an offer that does not include the payment of reasonable attorney's fees when the school district cannot reasonably believe that no attorney's fees have accrued.

Because she was substantially justified in rejecting Colonial's offer, Rena C. is eligible for attorney's fees accrued after Colonial's ten-day offer. We therefore will remand to the District Court for recalculation of attorney's fees.

D) <u>We do not address Rena C.'s remaining arguments.</u>

Rena C. argued that even if the IDEA precluded her from receiving attorney's fees, she would be entitled to fees under the ADA and § 504, and that the school district's counterclaim provided a separate ground for an award of attorney's fees. Because we hold that the IDEA does not preclude her from receiving attorney's fees for work done after the ten-day offer, we do not reach the arguments for these alternative grounds for fees.

## IV.

We will reverse and remand to the District Court for calculation of reasonable attorney's fees in accord with 20 U.S.C. § 1415(i)(3)(B)(i) and consistent with this Court's holding that Rena C. was substantially justified in rejecting the ten-day offer under 20 U.S.C. § 1415(i)(3)(E).

GREENAWAY, JR., *Circuit Judge*, concurring.

I agree that Rena C. was substantially justified in rejecting Colonial's offer because the offer did not include the payment of attorney's fees, and I join the majority opinion in full. I write separately to briefly discuss the difficulties certain kinds of ten-day offers can create for school districts, parents, and, ultimately, courts.

This case is illustrative of those difficulties because it requires us to interpret what is a short and, in my view, amorphous offer. The entire substance of the offer is contained in two sentences: "This offer is also being made in order to further limit the School District's possible prevailing party attorney fee attorney liability. The School District offers to pay private school tuition and transportation for Parent's unilateral placement at Delaware Valley Friends School ('DVFS')." JA 49. Colonial asked this Court to conclude that the offer's two sentences contained a number of implicit terms: pendency at DVFS and reimbursement for both one-one-one language arts instruction and attorney's fees. As the majority opinion explains, we agreed with Colonial regarding pendency and one-on-one instruction, but could not conclude that the terms of the offer implied that Colonial would pay the attorney's fees Rena C. had incurred up to that point.

I found the question regarding one-on-one instruction to be particularly challenging, both because the question of what falls within the ambit of tuition seems to me vague and indeterminate, and because the record here reveals little about the nature of the one-on-one services A.D. receives at DVFS. It merely indicates that DVFS provides her with a one-on-one instructor for the subject of language arts.

1

In deciding to join the majority opinion's conclusion that Colonial's offer to pay "private school tuition" included an offer to pay for this one-on-one instruction, I found it significant that Colonial's offer was unqualified. It did not, for example, say "base tuition" or "tuition only and no other cost or fee." As the majority opinion also notes, Colonial did not know that one-on-one instruction would be listed separately on the DVFS tuition invoice, so it had no reason to offer it expressly. Ultimately, I concluded that the record, though certainly far from comprehensive, provides enough information for us to infer confidently that the one-on-one instruction A.D. receives at DVFS is the kind of substantive curricular service that a school district like Colonial would generally consider to be within the ambit of a "tuition" payment.

It bears emphasis, however, that the majority opinion takes no position on whether countless other types of supplementary educational services would be included in an offer to pay "tuition." The opinion does not answer, for example, the question of whether a one-on-one aide who accompanies a student for assistance throughout the school day, but does not themself provide instruction, would be included. Nor does it determine whether physical therapy services, speech and language therapy services, or occupational therapy services would be included. Given the scarcity of information in the record here, I do not think this Court is well-positioned to provide much guidance regarding these questions.

I therefore would caution parties not to needlessly proceed to federal court based on the belief that our opinion here dictates the outcome in some future case involving some

2

other kind of educational service or instruction. Instead, I would suggest that parties in the future be clear and specific when crafting and discussing ten-day offers. School districts should be precise about what they are offering. Parents should be forthcoming about the services they are seeking or anticipate receiving for their children. And both school districts and parents should communicate throughout this process. As the majority opinion correctly notes, ten-day offers need not be non-negotiable. I understand that these cases can be deeply personal, and I am under no illusion that parties will always be on the best of terms, but litigants must prioritize the children at the heart of these disputes.

A protracted IDEA dispute should result from a legitimate disagreement about the needs of the student, not conflicting interpretations regarding the wording of a settlement offer. Indeed, ten-day offers should foster discussion, which hopefully will often lead to the prompt resolution of IDEA disputes without the need for due process hearings or litigation. This purpose is not served, however, when parties treat terse or inexact offers as non-negotiable. In those circumstances, the parties potentially prolong the dispute unnecessarily, for they risk losing sight of what is most important: ensuring that the child gets the educational services needed. Had the parties in this case communicated more effectively, the dispute very well could have been resolved far earlier and with the expenditure of fewer public funds. My hope is that parties in these types of actions shall, in the future, heed this caveat.