07-0874-ag
Gomez-Beleno v. Holder

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Motion Submitted:     May 3, 2011                    Decided: July 7, 2011)

Docket No. 07-0874-ag

_____

GILBERTO WILLIAM GOMEZ-BELENO, SANDRA AVILA-GAVIRIA, a/k/a SANDRA AVILA-GAVARIA,

*Petitioners*,

– v. –

ERIC H. HOLDER, JR., United States Attorney General,

*Respondent.*[*]

_____

Before: WALKER, CALABRESI, and WESLEY, *Circuit Judges*.

_____

Successful petitioners for review of decisions of the Board of Immigration Appeals move to recover fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). The motion is GRANTED, and the petitioners are awarded $9,690.00 in fees and $751.04 in costs.

_____

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., is automatically substituted for former Attorney General Michael B. Mukasey as the respondent in this case.  The Clerk of the Court is directed to amend the caption to read as shown above.

ANNE PILSBURY, Central American Legal Assistance, Brooklyn, N.Y., *for Petitioners*.

GREGORY G. KATSAS, Assistant Attorney General, LINDA S. WERNERY, Assistant Director, WALTER BOCCHINI, Attorney,[†] Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., *for Respondent* (on the motion).

CALABRESI, *Circuit Judge*:

Gilberto William Gomez-Beleno and Sandra Avila-Gaviria (collectively "the Petitioners") successfully sought review by this Court of a final order of removal. They now move for costs and fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). The Government opposes the motion, arguing that the Petitioners are not entitled to a fee award on the ground that the "position of the United States was substantially justified." *Id.* § 2412(d)(1)(A). We find that the position of the United States was not substantially justified. We therefore grant the Petitioners' motion and award them $9,690.00 in fees and $751.04 in costs.

## PROCEDURAL BACKGROUND

**I. Application for Relief**

The Petitioners are natives and citizens of Colombia. They entered the United States in September 2001, as nonimmigrant visitors with authorization to remain for three months. On May 7, 2002, Gomez-Beleno, along with Avila-Gaviria as a derivative applicant, filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

---

[†] Walter Bocchini is substituted for Scott Rempell, who briefed this motion, as counsel for Respondent.

In his application, Gomez-Beleno alleged that in March 2000, while working for a mining company in Colombia, he began receiving phone calls from individuals identifying themselves as members of the Fuerzas Armadas Revolucionarias de Colombia (the "FARC").[1] These individuals, he asserted, pressured him to leave his job, join the FARC, and provide the organization with information about his employer. He further asserted that, having refused these overtures, he was repeatedly threatened and harassed by individuals claiming allegiance to the FARC. Among other things, he alleged that these individuals assaulted him, made intimidating phone calls to him and his family, and sent him a written death threat, known in Colombia as a "sufragio."[2]

After a hearing on September 4, 2002, an Immigration Judge ("IJ") denied the application for relief. The IJ found that Gomez-Beleno's testimony, "while consistent internally and consistent with [his wife's testimony], was not plausible and was not believable." The IJ further found that the testimony, even if credible, did not "demonstrate that [the Petitioners] have suffered persecution in a manner, which would warrant an award of asylum or other relief in this case." That was so, the IJ explained, because (1) the acts described were acts of a "terrorist criminal organization," not the Colombian government; (2) the acts described were "acts of extortion or recruitment" and were therefore not related to Gomez-Beleno's political opinions; and (3) the Colombian government "appears to be willing and, to the extent possible, able to provide protection to [Gomez-Beleno] and his family." The IJ thus denied all requested relief and ordered the Petitioners removed to Colombia.

---

[1] We have characterized the FARC as "an anti-government terrorist organization responsible for large numbers of civilian casualties, political murders, and forced disappearances." *Delgado v. Mukasey*, 508 F.3d 702, 704 (2d Cir. 2007).

[2] According to the Petitioners, a *sufragio* is "an elaborate version of a Hallmark type greeting card, usually sent as a condolence card when someone has died, but used in Colombia to signify that someone, the recipient, *will soon die*."

The Petitioners timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which, on April 9, 2004, affirmed the IJ's decision and dismissed the appeal. The BIA did not address the IJ's adverse credibility finding, but it did "agree" with the IJ that "the FARC threatened [Gomez-Beleno] because he refused to work for them, rather than due to his actual or imputed political opinion." The BIA therefore concluded that Gomez-Beleno had "failed to establish that he suffered past persecution or has a well-founded fear of future persecution on account of a protected ground." Although the BIA mentioned that Gomez-Beleno had applied for CAT relief, it did not specifically address his CAT claim.

**II. First Petition for Review**

On May 7, 2004, the Petitioners timely petitioned this Court for review of the BIA's decision. In response, and in lieu of a brief, the Government filed a motion to vacate and remand the case back to the BIA, claiming that the BIA (1) should have addressed the IJ's adverse credibility finding, and (2) should have further considered whether "Gomez-Beleno was targeted by the FARC by imputation to him of a political opinion." The Petitioners opposed the Government's motion as premature; they urged us to make findings "on credibility and on the Petitioners' eligibility for asylum" before remanding the case.

On March 8, 2006, we issued an order (the "March 8 Order") granting the Government's motion to vacate and remand, and we instructed the BIA to make findings as to: "(1) whether Gomez-Beleno had a political opinion; (2) whether the [FARC] threatened Gomez-Beleno, in whole or in part, based on that political opinion or a political opinion the FARC imputed to Gomez-Beleno; and (3) whether Gomez-Beleno is entitled to CAT relief." We further instructed the BIA to "issue findings on Petitioners' CAT claim." We also noted that "in its discretion, the BIA may, but is not required to, issue findings on the Petitioners' credibility."

4

**III. Proceedings on Remand**

Following our decision to vacate and remand, the Government asked the BIA to send the case back to the IJ for additional fact-finding on the questions identified in the March 8 Order, noting that "the only way to rectify this situation is to remand." In the alternative, the Government argued that the BIA should deny relief on the record before it.

The BIA did not remand for further fact-finding and, on February 6, 2007, issued a decision (the "February 6 Decision") affirming the IJ's denial of relief and dismissing the appeal. "[A]gain declin[ing] to address the Immigration Judge's adverse credibility determination," the BIA held that Gomez-Beleno had not "adduced sufficient evidence to suggest that the FARC's threats were motivated on account of his political opinion, imputed or otherwise." In support of this conclusion, the BIA cited to "the wording of the *sufragio*," which, it claimed, "indicat[ed] that the death threats received were due to [Gomez-Beleno's] 'unwillingness to collaborate *without cause*.'" Certified Administrative Record at 3 (emphasis added). This was, however, a misquotation of the translated *sufragio* in the record, which actually referenced Gomez-Beleno's "unwillingness to collaborate *with our cause*." Certified Administrative Record at 296 (emphasis added).

The BIA also agreed with the IJ's conclusion that Gomez-Beleno had failed to establish eligibility for CAT relief, holding that "there is no evidence in the record to suggest that the government of Colombia acquiesces to the illegal activities of [the FARC]."

**IV. Second Petition For Review**

Gomez-Beleno timely petitioned this Court for review of the BIA's February 6 Decision, and the Government moved for a remand on Gomez-Beleno's CAT claim. In particular, the Government claimed that remand was necessary so that the BIA could (1) "consider whether the

Columbian [sic] government has 'control' over the FARC, and, if not, whether Petitioners can obtain CAT protection based on feared violence from groups not under the government's control," and (2) "reevaluate its finding that the record contains 'no' evidence of government acquiescence." The Government did not ask for a remand on Gomez-Beleno's asylum and withholding-of-removal claims.

We denied the Government's motion, and the Government then filed a brief on the merits. Consistent with its earlier motion, the Government maintained that a remand was necessary on the CAT claim. But the Government defended the BIA's treatment of the asylum and withholding-of-removal claims, contending that the record supported the BIA's conclusion that the FARC did not threaten Gomez-Beleno on account of an actual or imputed political opinion.

On September 3, 2008, in an unpublished summary order, we granted the petition for review, vacated the BIA's decision in its entirety, and remanded the case to the BIA. *Gomez-Beleno v. Mukasey*, 291 F. App'x 411 (2d Cir. 2008) (summary order). In remanding on Gomez-Beleno's asylum and withholding-of-removal claims, we emphasized the BIA's misquotation of the *sufragio* and wrote:

> In its decision, the BIA quoted the sufragio as stating that Gomez-Beleno would be killed due to his "unwillingness to collaborate *without* cause." In fact, the translation in the record indicates that the sufragio stated that Gomez-Beleno would be killed due to his "unwillingness to collaborate *with our* cause." This mischaracterization of the record warrants remand. Indeed, its significance is plain: "without cause" may suggest that the FARC did not know the reason for Gomez-Beleno's refusal to assist them, while "with our cause" implies that the FARC believed that Gomez-Beleno would not assist them because he did not support their cause. As Gomez-Beleno argues, the sufragio may well establish that the FARC changed its focus from recruiting him to punishing him "for his attitude."

6

*Id.* at 413 (citation omitted).  In addition, we agreed with both the Petitioners and the Government that a remand was necessary on the CAT claim, finding that the BIA had "failed to consider whether the term 'government' in the regulations implementing CAT applies to the FARC as the de facto government in parts of Colombia." *Id.* at 414.

**V. EAJA Motion**

On October 2, 2008, the Petitioners, through their attorney, Anne Pilsbury, filed a timely motion for an EAJA award, requesting $9,690.00 in attorney's fees and $751.04 in costs, incurred in connection with the First and Second Petitions for Review. The Government opposes this motion on the ground that the position of the United States was substantially justified.

**DISCUSSION**

**I. Background Law**

The EAJA states in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a
> prevailing party other than the United States fees and other expenses, in addition
> to any costs awarded pursuant to subsection (a), incurred by that party in any civil
> action (other than cases sounding in tort), including proceedings for judicial
> review of agency action, brought by or against the United States in any court
> having jurisdiction of that action, unless the court finds that the position of the
> United States was substantially justified or that special circumstances make an
> award unjust.

28 U.S.C. § 2412(d)(1)(A). Thus, under the EAJA, "eligibility for a fee award in any civil action requires: (1) that the claimant be a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; [and] (3) that no 'special circumstances make an award unjust.'" *Commissioner, INS v. Jean,* 496 U.S. 154, 158 (1990).

The Government challenges the Petitioners' fee request only on the ground that "the position of the United States was substantially justified"; it does not attempt to characterize the Petitioners as non-prevailing parties, nor does it argue that special circumstances make the

7

requested award unjust. Consequently, we need only address the issue of whether the "position of the United States was substantially justified."

Before addressing that issue, however, we pause to recognize the EAJA's applicability to cases of this sort. Although we have not expressly stated that the EAJA applies in the immigration context, we and our sister circuits have previously applied the statute in cases quite similar to this one. *See, e.g.*, *Sotelo-Aquije v. Slattery*, 62 F.3d 54, 58-59 (2d Cir. 1995) (finding an EAJA award warranted in connection with a successful habeas petition challenging decisions of the IJ and BIA denying asylum and withholding of removal); *see also Kholyavskiy v. Holder*, 561 F.3d 689, 690 (7th Cir. 2009); *Li v. Keisler*, 505 F.3d 913, 917 (9th Cir. 2007); *Johnson v. Gonzales*, 416 F.3d 205, 209-10 (3d Cir. 2005). This practice, moreover, finds strong support in the statutory text, which permits prevailing parties to collect fees and costs "in *any* civil action (other than cases sounding in tort), *including proceedings for judicial review of agency action*." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). We therefore confirm that EAJA awards may be given—subject, of course, to the conditions set forth in the statute—in connection with successful petitions for review of decisions of the BIA.

**II. Was the Position of the United States Substantially Justified?**

The "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). Thus, our "substantial justification" inquiry encompasses not only the litigation position of the Office of Immigration Litigation ("OIL"), but also the underlying administrative decisions of the BIA and IJ.[3] *See Thangaraja v. Gonzales*, 428 F.3d

---

[3] Rather than file an earlier EAJA application following our disposition of the First Petition for Review, the Petitioners waited until after disposition of the Second Petition for Review to request fees and costs incurred in connection with both Petitions. If one were to construe the First and Second Petitions as giving rise to separate civil actions before this Court, then one

8

870, 873-74 (9th Cir. 2005) (rejecting the contention that the "position of the United States" excludes decisions of IJs and the BIA); *cf. Sotelo-Aquije*, 62 F.3d at 58-59 (finding that the position of the United States was not substantially justified in light of deficiencies in the decision of the BIA).

A position is substantially justified if it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Jean*, 496 U.S. at 158 n.6 (internal quotation marks omitted). The Government bears the burden of showing that this standard has been met—*i.e.*, that the position of the United States "'had a reasonable basis in both law and fact.'" *Vacchio v. Ashcroft*, 404 F.3d 663, 674 (2d Cir. 2005) (quoting *Sotelo-Aquije*, 62 F.3d at 57).

Applying these standards to the facts of this case, we hold that the administrative decisions below, taken together with the litigating position of the OIL, do not satisfy the "substantial justification" requirement.

The BIA committed significant errors of law and fact that prejudiced the Petitioners' case and gave rise to two remands from this Court. Most important, the BIA grounded its disposition of the asylum and withholding-of-removal claims on a material misquotation of the *sufragio*. *Cf. Li Zu Guan v. INS*, 453 F.3d 129, 140 (2d Cir. 2006) (finding that an analysis "compromised by

---

might challenge the amount of the requested award, on the basis that it improperly includes fees and costs from a proceeding whose EAJA statute-of-limitations period expired well before this motion was filed. *See* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses . . . ."). But, "the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Commissioner, INS v. Jean*, 496 U.S. 154, 161-62 (1990). And the Government has not asserted that the First and Second Petitions should in this case be treated separately. We therefore deem any such argument forfeited.

factual error" is "flawed as a basis for denying relief").[4] In addition, the BIA did not adequately consider Gomez-Beleno's claim for CAT relief. In its first decision, the BIA provided no explanation for its affirmance of the IJ's denial of the CAT claim, and in its second decision the BIA did not address "whether the term 'government' in the regulations implementing CAT applies to the FARC as the de facto government in parts of Colombia." *Gomez-Beleno*, 291 F. App'x at 414. Given these deficiencies in the proceedings below, we cannot conclude that the underlying administrative decisions had a reasonable basis in law and fact.

But that does not end our inquiry, as we also must consider the OIL's litigation position before this Court. It is true that the OIL chose not to defend certain aspects of the BIA's decisions. But we do not think that its requests for a remand on certain issues were sufficient to overcome, for "substantial justification" purposes, the significant administrative errors below. We note in this respect that the OIL did not request a remand on—and indeed, actively defended—the BIA's second rejection of the Petitioners' asylum and withholding-of-removal claims, even though this ruling derived from the above-described misquotation of the *sufragio* and hence lacked a reasonable basis in law and fact.

The Government downplays the significance of this point, noting that Gomez-Beleno "never brought up, discussed, or used this mischaracterization of the wording of the *sufragio* as a

---

[4] The parties disagree as to whether the Government paid sufficient heed to our "mixed-motive" case law, under which, for example, "the conclusion that a cause of persecution is economic does not necessarily imply that there cannot exist other causes of the persecution." *Osorio v. INS*, 18 F.3d 1017, 1028 (2d Cir. 1994). The Petitioners claim that the BIA "fail[ed] to apply" this doctrine, while the Government contends that "the agency never took a position that ignored Second Circuit case law, nor did the Government ever suggest, much less advocate, that an alien could not establish that a persecutor may have multiple motives for seeking to harm an alien." Whatever the merits of these claims, this debate is largely beside the point. What matters here is that, in reaching the conclusion that Gomez-Beleno's alleged persecution was not politically motivated, the BIA relied heavily on an incorrect reading of the record. Even assuming, then, that the agency did apply the "mixed motive" doctrine, its misquotation of the *sufragio* rendered its application of the doctrine fatally flawed.

10

basis for claiming error by the agency." We do not see the relevance of this fact. A petitioner's failure to identify certain errors committed at the agency level does not absolve the Government of its independent obligation to conduct "candid and rigorous evaluations of the agency's explanations of its decisions," *Thangaraja*, 428 F.3d at 875, before choosing to defend those decisions before this or any other court. Hence, we reject the Government's contention that this aspect of the BIA's decision (and, by extension, the OIL's defense of this decision) was somehow rendered substantially justified by the Petitioners' failure to bring the misquotation to our attention.[5]

Accordingly, we find, on the record before us, that the Government has not carried its burden of showing that the position of the United States was substantially justified. We therefore hold that the Petitioners are entitled to a fee award.[6]

**III. Cost-of-Living Increase**

"[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The Petitioners calculate their fees at a rate of $150 per hour—a $25 increase over the statutory rate. They explain that the upward adjustment is appropriate in light of "the scarcity of free legal representation for asylum seekers and the increase in the cost-of-living." The Government does not oppose a cost-of-living increase, but it "opposes an enhancement of fees on any other basis." Given that a $150-per-hour rate is much in line with

---

[5] In so holding, we express no view on whether the EAJA's "special circumstances" exception might preclude the recovery of fees in some cases in which the claimants have themselves failed to advance certain claims. As the Government has not challenged the Petitioners' fee request on "special circumstances" grounds, we need not address that issue here.

[6] Because we conclude that the OIL's litigation position before this Court was not substantially justified, we need not decide whether even a substantially justified litigation position could ever "cure" an insufficiently justified underlying agency decision for purposes of EAJA fees.

recent cost-of-living adjustments granted by courts of appeals in EAJA cases, *see, e.g.*, *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008) (finding $161.85 appropriate), and given that the Government does not oppose a cost-of-living increase, we conclude that the $150-per-hour rate here sought is justified on cost-of-living grounds, and express no view as to the other bases for the rate proffered by the Petitioners.

**CONCLUSION**

We have considered all of the Government's arguments in opposition to the Petitioners' EAJA motion and find them to be without merit. Accordingly, we **RECALL** the mandate for the limited purpose of deciding this motion, and we **GRANT** the motion. Petitioners are awarded $9,690.00 in fees and $751.04 in costs.