23-764 (XAP)
N.G.B. v. New York City Department of Education

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2024

(Argued:  April 24, 2025  Decided:  July 24, 2025)

No. 23-764-cv (XAP)

_____

N.G.B., individually and on behalf of J.B., a child with a disability,

*Plaintiff-Appellant-Cross-Appellee,*

– v. –

NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendant-Appellee-Cross-Appellant.*

_____

Before:        CALABRESI, LOHIER, *Circuit Judges*, and KARAS, *District Judge*.[*]

Defendant the New York City Department of Education ("DOE") appeals from a grant in part and denial in part of summary judgment, entered on March 31, 2023, in favor of Plaintiff N.G.B, individually and on behalf of J.B., in the United States District Court for the Southern District of New York (Lewis J. Liman, *Judge*).  N.G.B. moved for attorneys' fees and costs incurred during

_____

[*] Judge Kenneth M. Karas of the United States District Court for the Southern District of New York, sitting by designation.

administrative and federal proceedings brought to enforce the rights of her child under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The district court found that N.G.B.'s claimed hourly rates and hours expended were unreasonable and adjusted them accordingly. But it also found that N.G.B. was substantially justified in rejecting a settlement offer from DOE, thereby permitting N.G.B. to recover fees and costs incurred post-rejection. On appeal, DOE argues that the district court erred in finding substantial justification because such a finding is contrary to the IDEA's statutory scheme and unsupported by the record.

We conclude that the district court applied the correct standard in determining substantial justification and that the district court did not abuse its discretion in finding that N.G.B. was substantially justified in rejecting DOE's settlement offer. In a separate summary order filed simultaneously with this opinion, we resolve N.G.B.'s appeal along with the tandem appeals of other parents represented by N.G.B.'s counsel. Accordingly, we **AFFIRM** the judgment of the district court.

ANDREW KIERNAN CUDDY (Benjamin M. Kopp, *on the brief*), Cuddy Law Firm, P.L.L.C., Auburn, NY, *for Plaintiff-Appellant-Cross-Appellee*.

GEOFFREY E. CURFMAN (Richard Dearing, Rebecca L. Visgaitis, Philip W. Young, Lauren O'Brien, *on the brief*), of Counsel, *for* Muriel Goode-Trufant, Acting Corporation Counsel of the City of New York, New York, NY, *for Defendant-Appellee-Cross-Appellant*.

KENNETH M. KARAS, *District Judge*:

The New York City Department of Education ("DOE") appeals from the

district court's judgment finding under the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(E), that N.G.B., individually and on behalf of her minor child J.B., by and through her counsel, the Cuddy Law Firm, P.L.L.C. ("CLF"), was "substantially justified" in rejecting a settlement offer by DOE, thereby permitting recovery of attorneys' fees and costs incurred post-rejection. For the reasons stated below, we conclude that the district court applied the correct standard and did not abuse its discretion. In a separate summary order filed simultaneously with this opinion, we resolve N.G.B.'s appeal along with the tandem appeals of other parents represented by CLF. We therefore affirm the judgment of the district court.

## I. Background

### A. District Court Proceedings

On December 26, 2019, N.G.B. filed a due process complaint alleging that DOE failed to provide J.B. a free appropriate public education ("FAPE") for the 2019-2020 school year. (Sp. App'x 535–36.) Proceedings took place before an impartial hearing officer ("IHO") from December 2019 to March 2021, after which the IHO ruled in N.G.B.'s favor. (*See id.* 536–39).

On December 30, 2021, N.G.B. initiated this action seeking attorneys' fees pursuant to the IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B). (*See*

3

App'x 1500–08.)  On April 4, 2022, the district court issued a scheduling order that (1) required DOE to make a settlement offer by May 11, 2022, (2) required the parties to meet and confer on a Joint Rule 56.1 Statement by June 10, 2022, and (3) set a briefing schedule related to N.G.B.'s anticipated motion for summary judgment.  The opening brief was due by June 24, 2022, the opposition brief by July 8, 2022, and reply brief by July 22, 2022.  (*See* Sp. App'x 575; App'x 1493.)  DOE did not make an offer by the required date, and neither Party requested an adjustment to the schedule.  (*See* Sp. App'x 575.)

On May 18, 2022, an attorney from the New York City Law Department emailed a CLF attorney, Benjamin Kopp, informing him that the matter had been transferred to Elizabeth Cordero and Simone Nicholson.  (App'x 1611–12.)  The same day, Kopp emailed Nicholson with a request as to the "status of [DOE's] forthcoming offer" and noted that DOE had "exceeded its deadline" with respect to the offer.  (*Id.* 1610–11.)  More than a week later, on May 27, 2022, Kopp again emailed Nicholson, stating:

> If Defendant is going to make an offer with Comptroller approval on the current billing, please send me such offer by close of business today.  I have a tight schedule for June and will have to begin working on the fee motion this weekend, unless I have such an offer.  Accordingly, if Defendant is not planning to so provide by close of business today, then any offer, when made, will need to account for

4

time spent since billing was last provided, up to and including time spent on the motion as of the date of such offer.

(*Id.* 1609.) Nicholson responded that she had just been assigned to the matter and asked for "another week, and we will have an offer for you by end of next week for sure." (*Id.*) Kopp responded that CLF's billing records were two months old, prior DOE counsel had promised an offer by May 11, 2022, and the case's reassignment "should have no bearing on the fact that the Comptroller's memo should have been submitted long ago and an offer should have been made over two weeks ago." (*Id.* 1608–09.) On June 1, 2022, nine days before the court-ordered deadline, Kopp emailed Nicholson a proposed Joint Rule 56.1 Statement and stated:

> We are just about at a point to update the billing records so the updates can be included in DOE's request for Comptroller approval. It would, of course, be ideal to confirm that the Rule 56.1 Statement is more concrete beforehand, to, in turn, confirm a cut-off unless/until the necessity of any reply, and hopefully even get this settled before DOE's opposition becomes due.

(*Id.* 1608.) Two days later, Nicholson responded, stating:

> Happy to report that I can convey an offer from [DOE] to resolve this case for $17,000. As you know, this was just reassigned to me a little more than a week ago and I was successful in my efforts to get this expedited, and I'm actually surprised that I was able to get this much progress so quickly.

5

> Please let me know your thoughts. Also, please let me know if you'll consent to adjourn the briefing schedule by two weeks to give us time to get the case settled, and also commit to suspend work on the motion.

(*Id.* 1607–08.) On June 8, 2022, N.G.B filed her motion for summary judgment, (*see id.* 1493), and Kopp responded to Nicholson with updated timesheets and asked "if DOE will be making an offer that includes the updated billing," (*id.* 1607). He also stated:

> As previously discussed, the motion was primarily being prepared the weekend of May 28th. While Plaintiff is not currently interested in putting off completion of the motion, she remains open to a good faith offer from DOE. Plaintiff does not anticipate seeking any expedition of the briefing schedule. This should be ample time—indeed, two additional weeks—for DOE to resubmit to the Comptroller.

(*Id.*) N.G.B. never accepted the $17,000 offer, and DOE did not make any other offer. (*See id.*) The parties proceeded with summary judgment motion practice. (*See id.* 1493–96.)

On March 30, 2023, the district court granted in part and denied in part N.G.B.'s motion for summary judgment. The district court found that CLF's proposed hourly rates were excessive, (Sp. App'x 543–61), and reduced the claimed hours by 20%, (*id.* 566–67). The court calculated the total amount of fees and costs reasonably incurred prior to the offer at approximately $14,500, which was roughly $2,500 less than DOE's offer. (*Id.* 571.)

However, the court also found that N.G.B. was substantially justified in rejecting DOE's offer. (*Id.* 572–79.) The court reasoned it "is not the case" that "every rejection of an offer that turns out to have been greater than the court awarded for time incurred up to the date of the offer was not substantially justified." (*Id.* 573.) The court noted that such an interpretation is "not commanded by the statutory language," and "would effectively require counsel to take even the most lowball of settlement offers that DOE could credibly justify for fear that by challenging the offer, counsel would lose not only the offer but also the fees incurred in showing why the offer was unreasonable." (*Id.* 573–74.) Finally, the court pointed to analogous contexts in which other courts have found that the term "substantially justified" imposes a "reasonableness" standard. (*Id.* 574.)

In applying a reasonableness standard, the court found that CLF "was substantially justified in rejecting DOE's settlement offer" because "CLF had incurred substantial fees, including substantial additional fees that it reasonably believed were not taken into consideration in the settlement offer." (*Id.* 575.) The court rejected DOE's argument that "CLF should have known that a settlement offer was forthcoming and thus should have stopped work" on summary

7

judgment. (*Id.*) The court reasoned that CLF was justifiably skeptical of DOE's request to delay work on its summary judgment motion given that DOE had disregarded the "prior deadline regarding a settlement offer" and that DOE could have requested an extension "to permit it to obtain authority to make an offer and to give counsel the opportunity to consider that offer, without a court deadline looming." (*Id.* 576–77.) The court concluded that it was not unreasonable for CLF to keep working on the summary judgment papers and expect that DOE's offer would take that work into account, and so CLF was substantially justified in rejecting an offer that was based on outdated billing records. (*See id.*) The court also found that CLF's invoices and the underlying rates were not so inflated or unjustifiable that it was unreasonable for CLF to think it could recover more than DOE's offer. (*Id.* 577.) The court noted that while the majority of courts in the Southern District of New York had awarded fees at lower rates to CLF, a recent decision had awarded the exact rates that CLF claimed. (*Id.* 577–78.) Accordingly, the court found that it was not unreasonable for CLF to think that other courts might award similar, if not identical, rates. (*Id.* 578.)

## II. Discussion

On appeal, DOE contends that the district court erred in finding that N.G.B. and CLF were substantially justified in rejecting DOE's settlement offer. Specifically, DOE argues that a reasonableness standard contradicts the purpose of the IDEA fee cap provision and that DOE's offer did, in fact, account for CLF's work on summary judgment. (DOE Br. 73–75.)

## A. Standard of Review

"We review a district court's award for attorney[s'] fees, expenses, and costs for abuse of discretion." *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 125 (2d Cir. 2023) (per curiam) (quoting *Lilly v. City of New York*, 934 F.3d 222, 227 (2d Cir. 2019)). This review is "highly deferential" because district courts enjoy "inherent institutional advantages" in determining attorneys' fees. *Id.* (quoting *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 111 (2d Cir. 2011)). The Supreme Court has stated that the "essential goal" of fee shifting "is to do rough justice, not to achieve auditing perfection" and noted that it could "hardly think of a sphere of

9

judicial decisionmaking in which appellate micromanagement has less to recommend it." *Fox v. Vice*, 563 U.S. 826, 838 (2011).[2]

B.  IDEA

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A); *see also Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12 (1993) (noting that Congress enacted the IDEA to guarantee a free appropriate public education for children with disabilities).  "In practice, this means that States have an affirmative obligation to provide a basic floor of opportunity for all children with disabilities," meaning "an education 'likely to produce progress, not

---

[2] We note that the Ninth Circuit "review[s] de novo the district court's decision to deny an award of fees incurred after the [] settlement offer."  *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1220 (9th Cir. 2016).  The Supreme Court has emphasized "that the determination of fees 'should not result in a second major litigation.'"  *Fox*, 563 U.S. at 838 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  To that end and in service of the goal of "rough justice" and not "auditing perfection," the Supreme Court has cautioned that "appellate courts must give substantial deference" to a district court's "overall sense of a suit."  *Id.*  With this in mind, and with all due respect to our sister circuit, we believe that de novo review approaches the kind of appellate micromanagement that runs contrary to the deference normally shown to district courts in the attorneys' fees context, particularly in light of "the district court's superior understanding of the litigation."  *Id.* (quoting *Hensley*, 461 U.S. at 437).

regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" *T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (quoting *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015)). "To ensure that qualifying children receive a FAPE, a school district must create an individualized education program ("IEP") for each such child." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). If a parent believes that a proposed IEP fails to provide a FAPE for a child, the parent may file a due process complaint on behalf of their child, and the parent, who may be represented by counsel, and the local educational agency ("LEA") will participate in an impartial due process hearing to resolve the complaint. *See* 20 U.S.C. § 1415(c)(2)(A), (f)(1)(A); *see also M.O.*, 793 F.3d at 238–39 (laying out the statutory background). An IHO presides over the hearing and issues a finding of facts and decision. *See* 20 U.S.C. § 1415(f)(3), (h)(4).

The IDEA provides that a district court "may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). But the statute specifies that:

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—

11

(I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
(II) the offer is not accepted within 10 days; and
(III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D). This fee-shifting provision, also called a fee cap, does not apply if a parent "is the prevailing party and . . . was substantially justified in rejecting the settlement offer." 20 U.S.C. § 1415(i)(3)(E). In other words, if a district court finds that the prevailing parent was substantially justified in rejecting a settlement offer, the court may award attorneys' fees and costs for services performed after the offer is rejected.

The IDEA's fee-shifting provisions are interpreted "in consonance with those of other civil rights fee-shifting statutes." *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 73 (2d Cir. 2005) (quoting *I.B. ex rel. Z.B. v. N.Y.C. Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per curiam)). 42 U.S.C. § 1988 ("Section 1988"), another civil rights fee-shifting statute, is of particular relevance because "[t]he legislative history of the IDEA indicates that its fee-shifting provisions were intended to mirror those of [Section 1988]." *Id.* at 73 n.9. The Supreme Court has stated that the purpose of Section 1988 "is to ensure 'effective access to

12

the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at

429 (quoting H.R. Rep. No. 94-1558, at 1 (1976)). "When a plaintiff succeeds in

remedying a civil rights violation, . . . he serves 'as a "private attorney general,"

vindicating a policy that Congress considered of the highest priority.'" *Fox*, 563

U.S. at 833 (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)

(per curiam)). In a similar vein, circuit and district courts consistently note that

the purpose of the IDEA's fee-shifting provision "is to enable parents or

guardians of disabled children for whom the statute was enacted to effectuate

the rights provided by the statute." *D.S. v. Neptune Tp. Bd. of Educ.*, 264 F. App'x

186, 189 (3d Cir. 2008) (quoting *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 856

(3d Cir. 2006)); *see also, e.g.*, *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 471

(7th Cir. 2003) (stating that the IDEA's fee-shifting provision exists "[t]o ease the

financial burden on parents making claims" under the IDEA (citing 20 U.S.C. §

1415(i)(3)(B)); *Daniel v. Dist. of Columbia*, 174 F. Supp. 3d 532, 546 (D.D.C. 2016)

("Congress included the [IDEA] fee-shifting provision so that all children and

their families would be able to enforce the child's right to a free appropriate

public education, regardless of financial means." (quoting *Garvin v. Gov't of D.C.*,

910 F. Supp. 2d 135, 138 (D.D.C. 2012))); *Dicks v. Dist. of Columbia*, 109 F. Supp. 3d

126, 131 (D.D.C. 2015) ("The purpose of the IDEA'[s] fee shifting provision is to ensure that qualified counsel is available to enforce parents' rights.").

The legislative history of the IDEA confirms this understanding, as the statute was specifically amended to provide for the award of reasonable attorneys' fees to prevailing parties. *See* S. Rep. No. 99-112, at 2 (1985) ("Congress' original intent was that due process procedures, including the right to litigation if that became necessary, be available to all parents."); *id.* at 1 ("[T]he act established an enforceable right to a free appropriate public education for all handicapped children and established due process procedures, including the right to judicial review, to protect those rights."); *see also A.R.*, 407 F.3d at 73 n.9 (describing the legislative history of the IDEA's fee-shifting provision). Accordingly, district courts in this Circuit have noted that the IDEA's fee-shifting provision "plays an important role in 'attract[ing] competent counsel' to a field where many plaintiffs with meritorious cases could not afford to pay such counsel themselves." *G.T. v. N.Y.C. Dep't of Educ.*, No. 18-CV-11262, 2020 WL 1516403, at *10 (S.D.N.Y. Feb. 12, 2020) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)), *report and recommendation adopted*, 2020 WL 1503508 (S.D.N.Y. Mar. 30, 2020); *see also L.J. v. N.Y.C. Dep't of Educ.*, No. 20-CV-

14

10672, 2023 WL 5747465, at *6 (S.D.N.Y. Sept. 6, 2023) (same); *S.M. v. Taconic Hills Cent. Sch. Dist.*, No. 09-CV-1238, 2013 WL 1181581, at *3 (N.D.N.Y. Mar. 20, 2013) (noting the IDEA's "fee-shifting provision's purpose of 'assuring that civil rights claims of modest cash value can attract competent counsel'" (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 169 (2d Cir. 2011))).

C.  Analysis

In holding that N.G.B. was substantially justified in rejecting DOE's fee settlement offer, the district court started with the notion that the "rejection of an offer that turns out to have been greater than the court awarded for time incurred up to the date of the offer" does not necessarily foreclose a finding of substantial justification.  (Sp. App'x 573.)  From there, the court applied a good-faith reasonableness standard.  (*Id.* 574–77).  The district court supported its holding upon its findings that "the offer was made without taking into account significant work that CLF had performed" and "the offer that was rejected was only $2,500 higher than the amount that the [district court] ha[d] awarded for the time up to that date."  (*Id.* 578.)

We have not had occasion to determine what standard applies in evaluating substantial justification under the IDEA's fee-shifting provision.  CLF

15

argues for a good-faith reasonableness standard akin to that applied by the district court—*i.e.*, that a parent is substantially justified in rejecting a settlement offer so long as the parent has a good-faith, reasonable basis for doing so.  (Oral Arg. at 16:30–16:50.)  DOE asks for "a standard higher than reasonableness," (*id.* at 17:40–18:07), such as a "justified to a high degree" or "likely to prevail on the argument that's being made" standard, (*id.* at 19:42–20:03).

In *Pierce v. Underwood*, 487 U.S. 552 (1988), the Supreme Court addressed the interpretation of similar statutory language in the context of the Equal Access to Justice Act ("EAJA").  *Id.* at 563–68.  The EAJA provides that

> a court shall award to a prevailing party other than the United States fees and other expenses . . . , incurred by that party in any civil action . . . brought by or against the United States . . . , unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  The Supreme Court held that the standard for substantial justification is "justified to a degree that could satisfy a reasonable person."  *Pierce*, 487 U.S. at 565; *see also id.* at 566 n.2 ("[A] position can be justified even though it is not correct, and we believe it can be substantially . . . justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.").  Accordingly, we have applied this standard in EAJA cases, *see, e.g.*, *Gomez-Beleno v. Holder*, 644 F.3d 139, 145 (2d Cir.

16

2011) ("A position is substantially justified if it is 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" (quoting *Comm'r, INS v. Jean*, 496 U.S. 154, 158 n.6 (1990))); *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 189 (2d Cir. 2000) ("[T]he government's position was 'substantially justified' if it had 'a reasonable basis both in law and in fact.'" (quoting *Pierce*, 487 U.S. at 563)), and noted that the standard of review of a district court's finding of substantial justification is abuse of discretion, *see Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82 (2d Cir. 2009) (concluding that the district court abused its discretion in finding the government's position was substantially justified); *Healey v. Leavitt*, 485 F.3d 63, 67–68 (2d Cir. 2007) (affirming the district court's finding that the government's position was not substantially justified). At bottom, the standard "is essentially one of reasonableness." *CFTC v. Dunn*, 169 F.3d 785, 786 (2d Cir. 1999) (quoting *FEC v. Political Contributions Data, Inc.*, 995 F.2d 383, 386 (2d Cir. 1993)); *see id.* at 786–87 (noting that the standard of review on appeal is abuse of discretion).[3]

---

[3] District courts outside our Circuit have regularly applied this standard in IDEA cases concerning substantial justification. *See, e.g.*, *Rawlings v. Dist. of Columbia*, No. 24-CV-2122, 2025 WL 1432278, at *4 (D.D.C. May 19, 2025) (noting that "the failure to include reasonable attorneys' fees in an IDEA settlement offer justifies a plaintiff's

Only the Third Circuit has discussed the standard in any detail in the IDEA context. In *Rena C. v. Colonial School District*, 890 F.3d 404 (3d Cir. 2018), the Third Circuit addressed whether the plaintiff, a prevailing parent, was substantially justified in rejecting an offer from a local school district. The local school district made a settlement offer that included payment for tuition and transportation for the child in question, which the plaintiff rejected. *Id.* at 411. The parties then stipulated to a consent order that did not include attorneys' fees. *Id.* at 412. The plaintiff initiated a suit seeking approximately $70,000 in attorneys' fees, and the district court granted summary judgment for plaintiff, but awarded her only $7,438. *Id.* The district court found that the plaintiff did not receive more favorable relief during subsequent proceedings and that she was not substantially justified in rejecting the school district's offer. *Id.* The

rejection of that offer"); *Capistrano Unified Sch. Dist. v. S.W.*, No. 18-CV-1896, 2022 WL 872337, at *2 (C.D. Cal. Feb. 22, 2022) (noting that substantial justification may be found "where the parent had a good faith, reasonable belief that their eventual recovery would be higher than the offer" (quoting *Beauchamp*, 816 F.3d at 1222)), *aff'd*, No. 22-55295, 2023 WL 355419 (9th Cir. Jan. 23, 2023); *Lloyd ex rel. M.L. v. Ingenuity Prep Pub. Charter Sch.*, No. 18-CV-801, 2020 WL 6822681, at *4 (D.D.C. Nov. 20, 2020) (holding that "the basis for rejecting a settlement offer must also be at least objectively reasonable if it is to be substantially justified"); *JP ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 641 F. Supp. 2d 499, 509 (E.D. Va. 2009) (concluding that plaintiffs "were substantially justified in refusing the offer made by [the LEA], because a court decision with an impact on the amount of the award was pending, and they had a reasonable, good faith belief that their eventual award would be more favorable than the offer").

Third Circuit reversed and remanded, holding that "[a] parent is substantially justified in rejecting an offer that does not include the payment of reasonable attorney[s'] fees when the school district cannot reasonably believe that no attorney[s'] fees have accrued." *Id.* at 420. The Third Circuit reasoned that holding otherwise would "permit school boards to force parents to choose between securing an appropriate placement for their child and obtaining the attorney[s'] fees to which they would otherwise be statutorily entitled." *Id.* at 418. In so holding, the Third Circuit agreed with district courts in the District of Columbia that concluded that prevailing parents can be substantially justified in rejecting offers that cover only a small fraction of claimed attorneys' fees or include no attorneys' fees at all. *Id.* at 419 (citing *Dicks*, 109 F. Supp. 3d at 131, and *Daniel*, 174 F. Supp. 3d at 545–46, respectively); *see also Brighthaupt*, 36 F. Supp. 3d at 8 (concluding that plaintiff was substantially justified in rejecting an offer that calculated attorneys' fees at an hourly rate of $2, whereas the lowest reimbursement rate allowed by the court was $333.75).[4]

---

[4] In *Gary G. v. El Paso Independent School District*, 632 F.3d 201 (5th Cir. 2011), the Fifth Circuit held that a parent was not substantially justified in rejecting an offer that did not include attorneys' fees. *See id.* at 210. Importantly, the Fifth Circuit noted that although the record before it did not establish substantial justification, it did "not hold

Following the reasoning of the Third Circuit, we believe that it is inimical to the purpose of the IDEA to force prevailing parents to accept an offer that they reasonably and in good faith believe fails to provide adequate compensation. Indeed, a school district's

> unreasonable offer does not advance [the IDEA's] goals and it would be a pernicious and self-defeating interpretation of the IDEA to say that any offer of fees, no matter how unreasonable, must be accepted at the risk of losing all compensation from the date the settlement offer was made until the date the case is concluded.

*Brighthaupt*, 36 F. Supp. 3d at 9.  In keeping with this understanding, we hold that a district court may determine that a prevailing parent's rejection of a settlement offer is substantially justified where the court finds that the parent had a good-faith, reasonable belief for rejecting the offer.

Here, the district court found substantial justification because N.G.B. and CLF reasonably believed that DOE's offer did not account for work that CLF

---

that every plaintiff rejecting a settlement offer because it does not include [attorneys'] fees is, per se, not substantially justified in rejecting it."  *Id.* (italics omitted).  In *Gary G.*, the local school district made a settlement offer before the parent filed a due process complaint and before it became aware that the parent had retained an attorney and the attorney "had performed only 13.8 hours of work through the date of the settlement offer."  *Id.* at 204, 210.  The Third Circuit in *Rena C.* distinguished *Gary G.* by noting that the plaintiff in *Rena C.* had filed a due process complaint and the local school district "certainly knew that an attorney was involved" at the time the offer was extended.  *Rena C.*, 890 F.3d at 419.

performed and of which DOE was aware. (Sp. App'x 575–77.) Upon receipt of

the offer, N.G.B. and CLF had to choose between (1) accepting an offer that they

reasonably believed was calculated in error and (2) turning down the offer and

litigating the question of attorneys' fees, thereby taking on substantial risk. The

district court carefully laid out the circumstances that supported its finding. At

the outset, DOE ignored a court deadline and prevaricated as court-ordered

summary judgment deadlines rapidly approached. (*Id.* 575–76.) CLF informed

DOE that it was going to begin work on summary judgment and noted that the

billing records in DOE's possession were months old. Then CLF attempted to

reach a consensus on a Joint Rule 56.1 Statement on which the court had ordered

the parties to meet and confer. (*Id.* 575.) Instead, DOE made a settlement offer.

(*Id.* 576.) The district court found that

> [u]nder these circumstances, where the offer was made without
> taking into account significant work that CLF had performed, . . . CLF
> was substantially justified in rejecting the offer and in taking its
> chances that while it might be awarded less as a result of the federal
> litigation, it might also have been awarded more.

(*Id.* 578.) Because the court's findings were clearly explained and are supported

by the record, we find no abuse of discretion. *Cf. Rawlings*, 2025 WL 1432278, at

*4 (finding plaintiffs were substantially justified in rejecting an offer that

included only nominal attorneys' fees that were one-fifth the amount to which

21

plaintiffs were entitled); *Daniel*, 174 F. Supp. 3d at 545–46 (finding plaintiff was substantially justified in rejecting an offer that, by failing to include any attorneys' fees, was "unreasonable" and "insincere"); *Howard v. Achievement Preparatory Acad. Pub. Charter Sch.*, No. 15-CV-199, 2016 WL 1212409, at \*9 (D.D.C. Mar. 8, 2016) (finding plaintiff was substantially justified in rejecting an offer because, by omitting attorneys' fees entirely, the school's "offer bore no rational relationship to the actual fees plaintiffs incurred at the time the offer was made" (citation and quotation marks omitted)), *report and recommendation adopted*, 2016 WL 1226095 (D.D.C. Mar. 28, 2016); *Dicks*, 109 F. Supp. 3d at 131–32 (finding plaintiff was substantially justified in rejecting an offer that compensated plaintiff's attorney for only 1.2 hours, in comparison to the 33.5 hours expended, because "[a] settlement offer that compensates counsel for a mere fraction [of] its efforts deters parents from exercising their due process rights and, as such, is inimical to the IDEA'[s] purpose").

DOE's counterarguments are unavailing. For example, DOE argues that a finding of substantial justification premised on "arguments for even higher fees than are reflected in the . . . offer" threatens to "nullify" the fee cap provision because it incentivizes prevailing parents to always reject settlement offers, in

22

contravention of the provision's purpose of encouraging early resolution through settlement. (DOE Br. 71.) DOE is understandably concerned that prevailing parents will reject a settlement offer whenever they have "a remotely plausible argument or even a reasonable argument for expecting higher fees," (Oral Arg. at 20:03–20:49), and that this standard would allow the exception to "swallow" the fee cap rule since parents "can almost always make nonfrivolous arguments for higher fees," (*see* DOE Reply Br. 3–4). But there is a backstop to guard against DOE's hypothetical flood of attorneys' fees suits: the district court judge must actually find that the parent had a good-faith, *reasonable* belief that they were substantially justified in rejecting the offer.

It also does not follow, as DOE asserts, that the standard adopted here "frustrates" the IDEA's goal of incentivizing settlement "by creating financial risk for both parties." (DOE Reply Br. 6.) Our holding does not unsettle the litigation dynamics created by the fee cap provision—prevailing parents who turn down an offer still face the risk that a district court will reduce hourly rates and hours and find that their rejection was not substantially justified. At bottom, DOE is concerned that the imposition of a good-faith reasonableness standard will incentivize parents to reject any offer that DOE extends. This concern is also

understandable, because such an incentive could increase the number of IDEA fee disputes that DOE must litigate. But the solution is not the imposition of an overly difficult standard to satisfy that has no basis in the IDEA's statutory language; rather, DOE may have to rethink how it calculates its initial offers. Moreover, adopting DOE's proposed standard would create too high a bar and present prevailing parents with a Hobson's choice—accept the LEA's lowball offer or proceed with litigation and lose not only the offer but also the fees incurred in attempting to show why the offer was unreasonable. *See M.H. v. N.Y.C. Dep't of Educ.*, No. 20-CV-1923, 2021 WL 4804031, at *21 (S.D.N.Y. Oct. 13, 2021) ("Although a request for attorney[s'] fees should not result in a second major litigation[,] neither should the threat that counsel will not receive its reasonable fees be a bludgeon that can be used by the losing school district to coerce the parent at the administrative stage to an inadequate settlement or to a compromise of the parent's rights." (alteration adopted) (citations and quotation marks omitted)), *aff'd sub nom. H.C.*, 71 F.4th 120.

DOE also argues that the district court erred in citing to other courts' interpretation of substantial justification from "inapposite cases" that concern not "statutory provisions that were explicitly designed to encourage settlement," like

that of the IDEA, but rather other provisions of the EAJA, Federal Rule of Civil Procedure 37, and the Bankruptcy Code. (DOE Reply Br. 5–6.) DOE fails to articulate exactly why the IDEA compels a different interpretation of substantial justification. That the Supreme Court in *Pierce* and the other courts cited were considering similar language in the context of other statutes does not render those decisions inapposite. Indeed, in *Pierce*, the Supreme Court noted that the term "substantially justified" is susceptible to multiple interpretations, and drew on relevant interpretations in similar areas to reach its holding. *Pierce*, 487 U.S. at 564–65. We agree with the district court's analysis and conclude that it applied the correct standard here.

Next, DOE contends that its offer of $17,000 fully compensated CLF for its work. The argument goes like this: because DOE's offer of $17,000 was greater than the district court's award of approximately $14,500, DOE's offer necessarily compensated CLF for its work on the summary judgment motion through the offer date. (DOE Br. 73–74; DOE Reply Br. 9–10.) This post-hoc argument ignores the district court's findings and analysis, including that among the reasons why N.G.B. and CLF were reasonably justified in rejecting the offer was the fact that the timesheets DOE had at the time of the offer were approximately

two months old.  (*See* App'x 1608; Sp. App'x 575–76.)  We see no abuse of discretion in the district court's finding.  *See C.Q. v. River Springs Charter Schs.*, No. 18-CV-1017, 2019 WL 6331402, at *6 (C.D. Cal. Oct. 21, 2019) ("While [d]efendant's offers were more favorable to [p]laintiff than the ALJ's Decision, the attorney[s'] fees that [p]laintiff incurred as of the date of the offers made [p]laintiff reasonably justified in rejecting [d]efendant's settlement offers.")

DOE finally contends that the district court's finding that CLF's invoices "were premised on inflated hourly billing rates and 'excessive' hours worked" that other courts have rejected is in tension with its finding that it was not "unreasonable for CLF to think it could get more than the $17,000 that was offered."  (DOE Br. 74; *see also* DOE Reply Br. 7.)  DOE ignores the district court's explicit finding that "the invoices here were not so inflated or unjustifiable that the [c]ourt can say that it would have been unreasonable for CLF to think it could get more than the $17,000 that was offered" and its decision to credit CLF's argument that a recent decision by another court in the Southern District of New York awarding higher fees justified its belief that a higher fee award may be warranted in this action.  (Sp. App'x 577–78.)  Again, we see no abuse of discretion in the district court's findings or the reasoning that supported them.

## III.  Conclusion

We have considered DOE's remaining arguments and find them to be without merit.  Accordingly, and for the reasons set forth in the summary order filed simultaneously herewith, we **AFFIRM** the judgment of the district court.